UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT DAREN HALE**, <br><br> Petitioner, <br><br> vs. <br><br> **MICHAEL BURGESS**, <br><br> Respondent. | **2:19-CV-13670-TGB-APP** <br><br><br> **OPINION & ORDER DENYING THE HABEAS PETITION (ECF NO. 8) & DENYING A CERTIFICATE OF APPEALABILITY** |

Petitioner Robert Daren Hale, confined at the Oaks Correctional Facility in Manistee, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Oakland County convictions following a jury trial for second-degree murder, Mich. Comp. Law § 750.317; operating under the influence of narcotics causing death, Mich. Comp. Law § 257.625(4); operating while license suspended, revoked, or denied causing death, Mich. Comp. Law § 257.904(4); and failure to stop at the scene of an accident resulting in death, Mich. Comp. Law § 257.617. Petitioner is serving a sentence of fifty-three to eighty years in prison for the second-degree murder conviction and lesser terms for the remaining convictions. For the reasons that follow, the petition for a writ of habeas corpus (ECF No. 8) is **DENIED**.

1

# I. FACTS AND PROCEDURAL HISTORY

The Michigan Court of Appeals opinion affirming Petitioner's conviction contains a summary of the relevant facts which is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Shortly after 7:00 a.m. on September 13, 2015, defendant was driving a white truck that had been stolen the evening before. He proceeded southbound on Woodward Avenue at a high rate of speed and ran a red light at an intersection, striking a vehicle driven by Peter Whittaker. Whittaker was killed instantly. Defendant ran from the scene and was followed by a witness who saw him get into a silver car driven by another man. Defendant was later located and arrested. A crack pipe was found in the truck defendant was driving at the time of the accident. A blood draw performed on defendant approximately three hours after the accident showed cocaine in his system. Defendant moved to suppress the results of his blood test results, but the trial court denied the motion.

*People v. Hale*, No. 335396, 2018 WL 1734240, at *1 (Mich. Ct. App. Apr. 10, 2018).

Petitioner's conviction was affirmed on appeal. *People v. Hale*, 503 Mich. 879 (2018).

Petitioner filed a habeas petition in 2019, which was held in abeyance by Judge Arthur J. Tarnow, to permit Petitioner to return to

the state courts to exhaust additional claims. *Hale v. Par.*, No. 19-13670, 2020 WL 806175 (E.D. Mich. Feb. 18, 2020).

He filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500 which was denied. *People v. Hale,* No. 15-256959 (Oakland Cty. Cir. Ct., Dec. 6, 2021), ECF No. 15-15, *reconsideration denied*, No. 15-256959 (Oakland Cty. Cir. Ct., Jan. 26, 2022), ECF No. 15-17. The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Hale,* No. 362270 (Mich. Ct. App. Dec. 21, 2022); *People v. Hale*, 512 Mich. 908 (2023).

This Court subsequently granted Petitioner's motion to lift the stay and to amend his habeas petition. The Court ordered Respondent to file an answer. *Hale v. Burgess*, No. 2:19-CV-13670-TGB-APP, 2024 WL 4819566 (E.D. Mich. Nov. 18, 2024).

Petitioner seeks habeas relief on the following grounds:[1]

---

[1] Petitioner indicates in his reply brief that he only seeks to raise the claims raised in his amended habeas petition and not the ones raised in his original petition, even though Respondent addressed those claims as well in the answer. ECF No. 16, PageID.1737. As a general rule, amended pleadings supersede original pleadings. *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (citing *Hayward v. Cleveland Clinic Found.*,

I. Petitioner was denied due process because there was insufficient evidence in petitioner's case to prove the essential elements of second-degree murder where petitioner's conduct did not rise to the level of required malice (depraved indifference for human life) according to the standard set forth in *Jackson v. Virginia*.

II. Mr. Hale's constitutional right to effective assistance of counsel was violated when trial counsel failed to utilize the court approved funds to investigate and research expert assistance to become versed in the technical subject matter critical to Mr. Hale's case, to effectively challenge the prosecution's experts, and as a result Mr. Hale was denied his right to due process, to present a complete defense, and to a fundamentally fair trial.

III. Mr. Hale's constitutional right to effective assistance of counsel was violated when trial counsel failed to competently litigate Mr. Hale's 4th Amendment violation, because counsel failed to investigate and argue that the search warrant was "so lacking in indicia of probable cause" that no reasonably well-trained officer would have relied on it despite the judges' authorization, and the good-faith exception to the exclusionary rule cannot apply to save it.

IV. Mr. Hale's appellate counsel was constitutionally ineffective for failing to raise the foregoing claims.

V. Petitioner is entitled to an evidentiary hearing on these matters.

---

759 F.3d 601, 617 (6th Cir.2014)). This rule is applicable to petitions for a writ of habeas corpus. *Id.*

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. §§ 2241–2255, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell*

5

*v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–521 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (2010); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Under § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102.

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also White v. Woodall*, 572 U.S. 415, 419–420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable

7

dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 578 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state conviction became final. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citing *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

# III. ANALYSIS

## A. Sufficiency of Evidence Claim

Petitioner first claims that the trial judge erred in failing to direct a verdict of acquittal on the most serious charge of second-degree murder because there was insufficient evidence of malice aforethought.[2]

The trial judge denied this claim on post-conviction review:

Here, defendant's actions on September 13, 2015 showed a willful and wanton disregard for the safety of others and placed everyone on the road that morning in danger. While intoxicated with cocaine, defendant drove 92 mph through an intersection, and struck another vehicle. He then fled from the scene and failed to even attempt to render aid or call for help. This is adequate evidence of malice. Therefore, defendant is not entitled to relief from judgment on this basis.

*Hale,* No. 15-256959, *4, ECF No. 15-15, PageID.940.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction

---

[2] Petitioner's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).

is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below

that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Under Michigan law, the elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *Stewart v. Wolfenbarger,* 595 F.3d 647, 654 (6th Cir. 2010) (citing *People v. Goecke*, 457 Mich. 442, 463–64 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728 (1980)). Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F.3d at 658 (quoting *People v. Aldrich*, 246 Mich. App. 101, 123 (2001)).

Numerous Michigan cases have held that the malice aforethought required for second-degree murder can be inferred from a defendant's act of driving a motor vehicle erratically while under the influence of liquor or narcotics, particularly at high rates of speed, because such an action

evinces a wanton and willful disregard of the likelihood that the natural tendency of such behavior would be to cause death or great bodily harm. *See Goecke*, 457 Mich. at 471–72 (evidence sufficient to support defendant's conviction for second-degree murder; testimony established that the defendant lived within one mile of the scene of the accident, had a blood-alcohol content of 0.18 percent, drove well in excess of the speed limit, ran a red stoplight, drove through an intersection at a time when he could have seen at least three vehicles properly traveling through the intersection, narrowly missed hitting two cars before hitting the victims' car, and killed two people); *People v. Werner*, 254 Mich. App. 528, 532–33 (2002) (evidence was sufficient to support conviction for second-degree murder; defendant drove after becoming seriously intoxicated, defendant knew from a recent prior incident that if he drank, he might experience a blackout and drive recklessly and irresponsibly, and defendant knew, from a recent prior incident, that his drinking did more than simply impair his judgment and reflexes); *People v. Mayhew*, 236 Mich. App. 112, 12–26 (1999) (evidence that defendant had been warned several hours earlier that loose sway bar on his vehicle could cause vehicle to fishtail and lose control, but had nonetheless driven at excessive speeds while

weaving through traffic and cutting off other drivers, and that fatal accident occurred when defendant's vehicle fishtailed as he turned too sharply to get into another lane, was sufficient to support charge for second degree murder); *People v. Miller,* 198 Mich. App. 494, 498 (1993) (evidence supported conviction for second-degree murder; after arguing with passenger, who was his girlfriend, because she wanted to leave a party, intoxicated defendant endeavored to take her home and went speeding down highway, straddling lanes and running red lights, before colliding with another vehicle).

Similarly, federal courts have rejected sufficiency of evidence challenges to second-degree murder convictions in which the petitioner killed someone while operating a motor vehicle in an erratic or reckless manner while driving intoxicated on liquor or controlled substances. *See Aldrich v. Bock,* 327 F. Supp. 2d 743, 763 (E.D. Mich. 2004) (malice aforethought to support submit second degree murder conviction supported by evidence of alcohol impairment and drag racing at excessive rates of speed); *Hoskinson v. Bock*, 8 F. App'x 558, 560–61 (6th Cir. 2001) (evidence of malice was sufficient to support conviction for second-degree murder, in prosecution of petitioner who was driving while intoxicated;

14

petitioner was highly intoxicated when he left bar, having twice backed into same parked vehicle, his passengers advised him to slow down, but petitioner drove at high rate of speed through residential neighborhood, swerved to avoid hitting a stopped car, ran through a stop sign, and nearly hit another car, before driving over curb and striking victim, and then continued to drive for several blocks, even though passengers had jumped from moving vehicle and informed him that he had hit child).

Petitioner argues that the prosecution has failed to present sufficient evidence of malice. ECF No. 8, PageID.54. Specifically, Petitioner argues that "not every intoxicated driving case resulting in a fatality constitutes second-degree murder." *Id.* (citing *Werner*, 254 Mich. App. at 533). Instead, Petitioner argues, the "prosecution must prove that the defendant's actions 'disclosed a level of misconduct that goes beyond that of drunk driving." *Id.* (citing *Werner*, 254 Mich. App. at 533).

The facts presented to the jury reflect such a level of misconduct. Petitioner drove 92 miles per hour — nearly 70 miles per hour over the posted speed limit — through red light, and crashed into a car, killing another person. Petitioner then fled from the scene of the crime. Additionally, the presence of a crack pipe in the vehicle raises a

reasonable inference that he had smoked crack cocaine while driving or before driving the vehicle. Lastly, Petitioner was driving on a suspended license at the time of the crash.

In light of this evidence, the Michigan Court of Appeals reasonably determined that a rational trier of fact could have found the elements of second-degree murder, particularly the element of malice, beyond a reasonable doubt. *Hoskinson,* 8 F. App'x at 560–61. Petitioner is not entitled to habeas relief on his first claim.

## B. Ineffective Assistance of Counsel Claims

Petitioner in his second and third claims alleges the ineffective assistance of trial counsel. In his fourth claim, he asserts he was denied the effective assistance of appellate counsel.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was

not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. *Id.* Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689–90. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 696.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 1. Trial Counsel's Purported Failure to Consult and Call Expert Witnesses

In his second claim, and his first effective assistance of counsel claim, Petitioner challenges the adequacy of his trial counsel's preparation and investigation, arguing that counsel's failure to secure and meaningfully utilize defense experts in toxicology and accident

reconstruction deprived him of the effective assistance guaranteed by the Sixth Amendment.

As Petitioner explains, the trial court "granted the defense funds to seek expert assistance in the field of accident reconstruction, and toxicology," after defense counsel filed a motion requesting such funds, arguing that "Defendant cannot safely proceed to trial without them … [And] it is of paramount importance than an expert review the lab reports in an effort to explain the chemical substances found in the reports as well as their potential effect on an individual at different levels." ECF No. 8, PageID.65 (alterations in original).

Trial counsel subsequently reached out to three experts. First, trial counsel "emailed a general toxicologist Dr. Michael Smith, whom he learned of from other prosecutors." *Id.* However, "counsel informed Mr. Hale that Dr. Smith was pro-prosecution, thus not an advocate for the defense and he would not be retaining him." *Id.*

Second, trial counsel "made contact with a retired MSP Trooper. (counsel never gave his name)." *Id.* However,

> the retired MSP Trooper had stated that he looked over the CDR data counsel provided to him, and that he could not see any apparent errors in the data, and for him to determine if

19

the speeds in the report were accurate he would need more information from counsel, to calculate and compare it to.

*Id.*

Third, trial counsel contact Dr. Michele Glinn, the prosecution's expert witness on "the effects of cocaine on the human body and other toxicology related matters." *Id.* Trial counsel "discussed the facts and circumstances of the case with her, the same as he had done with Dr. Smith, and Dr. Glinn's opinion was the opposite of Dr. Smith." *Id.* In other words, "Dr. Glinn was in favor of the defense." *Id.* at PageID.65–66. Accordingly,

> Counsel at that point abandoned any further research to seek expert assistance of his own to support the defense, and to help him prepare for trial. Counsel relied solely on the expectation that Dr. Glinn would testify at trial in support of his defense.

*Id.* at PageID.66.

According to Petitioner, trial counsel's failure to adequately investigate and consult experts "deprived Mr. Hale of a substantial defense." *Id.*

Thus, when "Dr. Glinn did not show up at trial," and "the prosecution introduced Mr. Hale's toxicology report through Dr. Ljubisa Dragovic, the Oakland County Medical examiner whom performed the

autopsy on the victim," Counsel was completely unprepared and had an

ineffective cross-examination. *Id.* Specifically,

> There was no questioning by counsel whatsoever that
> suggested that the toxicology report was anything but valid
> for determining that the levels in Mr. Hale's system at the
> time of the blood draw indicated he was under the influence
> of cocaine, and nothing was offered at trial to impeach the
> validity of that conclusion.

*Id.* at PageID.72. Accordingly,

> Counsel made a critical error by putting his trial strategy into
> the hands of a prosecution expert, who ultimately did not
> show up for trial. And this left the jurors with questions they
> had regarding the levels of substances indicated in Mr. Hale's
> toxicology report.

*Id.* Instead, if

> [trial] counsel would have conducted a minimal investigation,
> he would have found that there were experts available to him
> to forward his theory of defense, with the same exact
> information Dr. Glinn had provided, directly contradicting Dr.
> Dragovic's testimony and supporting his defense theory that
> Mr. Hale was not under the influence of cocaine at the time of
> the crash.

*Id.* at PageID.66. For instance, Petitioner points to

> a correspondence from Dr. Randall Commissaris … indicating
> that he reviewed the toxicology report and the facts
> surrounding the timeline of the crash, (7:15 a.m.) the time Mr.
> Hale was apprehended, (10:22 a.m.) and when the blood was
> drawn (11 :48 a.m.). Dr. Commissaris concluded "that I could
> be of assistance in your case in terms of preparing an affidavit
> or even providing testimony on your behalf."

*Id.*

Additionally, Petitioner faults trial counsel for his failure to investigate and consult experts to counter the prosecutions "accident reconstruction and crash data-experts." *Id.* PageID.68. Petitioner gives several examples of trial counsel's purported lack of preparation. We recount these examples.

Petitioner alleges that when the prosecution's expert witness's report included certain "inaccuracies," Petitioner "tried to help counsel in his questioning, to no avail." *Id.* at PageID.69. Petitioner alleges that "[i]t was Clear counsel did not understand any of the data and was unprepared and confused." *Id.* Petitioner alleges that

> Counsel made confusing statements during cross-examination of Sanford. [Counsel]: "[T]he accelerator pedal is being pushed more, but yet the RPMs are going down. How does that correlate? I don't – I'm a layperson, I don't understand, I don't know anything about cars. What does that mean?" Shortly after Sanford finishing his testimony, the court broke for lunch. (at 11 :38 a.m., jury removed)." Because counsel was so confused about the data on pg. 7 of the report, Mr. Hale during the lunch break, wrote out a quick-note *(Appendix-F)* to try and help counsel understand certain functions that counsel was clearly confused about. Following lunch, Mr. Hale gave the note to counsel and informed him he needed to speak with him, so they could go over this imperative information in an attempt to try to help counsel to better understand the data on pg. 7. Of the crash data report.

Counsel still confused, told Mr. Hale "that he just didn't
understand this stuff."

*Id.* (alteration in original) (citations omitted).

During the cross-examination of another of the prosecution's expert

witnesses,

> counsel again made confused statements: "[O]kay. You said —
> well, first of all, I'll have to confess, I'm not very smart when
> it comes to the mechanics of cars. I'm not — I don't really know
> anything ... but if you could just keep it simple so I can
> understand, I would appreciate it ... " and again "So isn't —
> and like I said, I'm a layperson, I don't understand this stuff."

*Id.* (citations omitted).

Further, Petitioner alleges that

The Prosecution relied solely on the page 7 of the crash data
report, to establish the speed of the F-250 Mr. Hale was
driving. This report was forwarded through law enforcement
experts, without any meaningful adversarial challenge by
defense counsel, because counsel failed to conduct any
research to become versed in the subject matter of the crash
data report.

*Id.* at PageID.70. However, the report itself conceded that it "had

limitations and that it needed to be examined in conjunction with the

evidence from the accident scene." *Id.* at PageID.70–71.

Lastly, Petitioner alleges that

Counsel failed to consult with experts that would have
provided experienced knowledge about the data, in order to

> help counsel to understand the data and to prepare him to
> forward an effective challenge on cross-examination of the
> prosecution's expert's opinions, and determine whether or not
> to call his own expert[s] to the stand.

*Id.* at PageID.70 (alterations in original).

As the Respondent recognizes, Petitioner raised this argument to the Oakland County Circuit Court, which denied it on the merits. *See* ECF No. 14, at PageID.240. Specifically, Judge O'Brien stated

> Defendant first claims that trial counsel was ineffective for
> failing to adequately investigate and attempt to secure
> suitable assistance to prepare and legitimize his presentation
> of defense strategy. More specifically, defendant claims that
> trial counsel did not have sufficient information to legitimize
> his choice against further investigation and/or hire an expert
> in accident reconstruction and hire an expert in the effects of
> cocaine on the human body and other toxicology related
> matters. However, "[d]ecisons regarding what evidence to
> present, whether to call witnesses, and how to questions
> witnesses are presumed to be matters of trial strategy[.]"
> *People v Horn,* 279 Mich App 31, 39; 755 NW2d 212 (2008).
> This court will not substitute its judgment for that of counsel
> regarding matters of trial strategy, nor will it assess counsel's
> competence with the benefit of hindsight. *People v Rockey,* 237
> Mich App 74, 76–77; 601 NW2d 887 (1999). "The fact that
> defense counsel's strategy may not have worked does not
> constitute ineffective assistance of counsel." *People v Stewart
> (On Remand),* 219 Mich App 38, 42 555 NW2d 715 (1996).
>
> Furthermore, defendant has not established that, but
> counsel's alleged failure to investigate, that there is a
> reasonable probability, that the outcome of the proceedings
> would have been different. Here, defendant merely claims
> that counsel failed to consult experts who "would meaningful

> assisting assist him" in advancing defendant's defense.
> Moreover, defendant has not attached any affidavits or other
> evidence to support his contentions that there were other
> witnesses or other evidence that could have been presented in
> order to raise doubt about his guilt. Therefore, defendant has
> not established either "good cause" or "actual prejudice." MCR
> 6.508(D)(3)(a) and (b).

ECF No. 15-15, PageID.941. The Respondent argues that "[t]his decision is not contrary to or an unreasonable application of clearly established federal law. ECF No. 14, PageID.242. The Court agrees.

The question for this Court on habeas review is "whether any 'fairminded jurist' could agree" with the trial court that counsel's failure to consult additional experts—either for counsel's own edification, or to seek to offer their testimony at trial—satisfied the reasonableness standard enunciated in *Strickland. Davis v. Carpenter,* 798 F.3d 468, 473 (6th Cir. 2015).

The Supreme Court has found that a counsel's strategic decisions such as whether to hire an expert, are entitled to a "'strong presumption' of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). Thus, selection of an expert witness by a defense attorney is a "paradigmatic example" of the type of strategic choice that, when made after thorough investigation of the law and facts, is "virtually unchallengeable" under

25

*Strickland. Hinton v. Alabama*, 571 U.S. 263, 275 (2014). The Supreme Court has also cautioned against launching "federal courts into examination of the relative qualifications of experts hired and experts that might have been hired." *Id.* Thus, even when the prosecution has offered expert testimony, *Strickland* does not require defense counsel to offer their own expert testimony. *See Richter*, 562 U.S. at 110–11 ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense.").

On the other hand, the Supreme Court has found a trial counsel's performance to be unreasonable when trial counsel hired an expert that he himself considered inadequate "based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Hinton*, 571 U.S. at 273.

Beyond these guideposts, the Supreme Court has not defined the exact boundaries of professionally reasonable conduct concerning how diligently an attorney must search for a suitable expert before deciding to proceed without one. *Davis,* 798 F.3d at 473. Specifically, the Sixth Circuit, in *Davis*, held that when faced with the question of whether trial

26

counsel was ineffective for failing to seek additional experts to support the defense theory that the victim in that case had died after being accidentally dropped, the Tennessee Court of Appeals found itself in "open water":

> The Supreme Court has never reached the specific questions that the Tennessee courts answered in this case: how many experts must an attorney contact before proceeding without one, what kinds of outside advice can the attorney rely upon, and ultimately how hard must he try. The only buoy in sight, far off on the horizon, was the Court's guidance in *Strickland* itself that counsel's efforts must be within "the wide range of reasonable professional assistance [.]" 466 U.S. at 689, 104 S. Ct. 2052. That rule is as general as they come. And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004).

*Id.* at 473–74 (alterations in original).

Thus, *Davis* held that the Tennessee Court of Appeals did not unreasonably apply *Strickland* in finding that trial counsel's effort to locate a medical expert were professionally reasonable. *Id.* at 474. In that case, trial counsel had attempted to persuade the expert from the first trial to testify again and, when that failed, worked closely with the expert's attorney to identify a replacement. *Id.* Counsel also contacted one or two doctors himself. *Id.* Although *Davis* acknowledged that

27

counsel could have done more, *Davis* held that that a fairminded jurist could conclude that his efforts "fell in the permissible zone between 'best practices' and outright incompetence." *Id.*

Similarly, in *Flick v. Warren*, the Sixth Circuit held that "[e]ffective assistance does not require counsel to continue contacting experts until he found one ... willing to testify against the prosecution's theory of the case." *Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012) (petitioner's counsel in a second-degree murder prosecution was not ineffective for failing to call an expert to challenge the science underlying Shaken Baby Syndrome, after counsel had contacted three doctors seeking help with the case and had received unfavorable responses from all three).

In the present case, trial counsel's efforts "fell [within] the permissible zone between 'best practices' and outright incompetence." *Davis,* 798 F.3d at 473. Specifically, trial counsel reached out to two experts, neither of whom indicated that they could rebut the prosecution's case.

Additionally, Petitioner acknowledges that trial counsel's decision to not continue consulting with experts was based on "the expectation that Dr. Glinn" — the prosecution's witness who had informed defense

counsel that she "was in favor of the defense" — "would testify at trial in support of his defense." ECF No. 8, PageID.65–66. In the light of this rationale, trial counsel's decision to not continue consulting with experts was a paradigmatic "strategic choice" that did not pan out and not the result of "ignorance of a point of law that is fundamental to his case combined with [trial counsel's] failure to perform basic research." *Hinton*, 571 U.S. at 274. As the Sixth Circuit has explained, "[e]ffective assistance does not require counsel to continue contacting experts until he found one … willing to testify against the prosecution's theory of the case." *Flick*, 465 F. App'x at 465.

Petitioner's arguments to the contrary do not change this outcome. First, Petitioner points to case law in support of the assertion that "Counsel[']s decision to rely solely on the prosecution[']s experts in this case, is acutely ineffective assistance at the highest level." ECF No. 8, PageID.74. However, almost none of the cited authorities stem from the Supreme Court, necessary to establish "an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d).

In any case, the facts of this case are unlike the factual circumstances described in the case law relied upon by Petitioner. Thus,

the Court does not find that trial counsel's actions in this case, including his performance during cross examination and his mistaken reliance on the testimony of Dr. Glinn, are mistakes of such magnitude as to be considered ineffective.

Petitioner does point to *Hinton*'s holding that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton*, 571 U.S. at 274. Here, however, trial counsel did not exhibit "ignorance of a point of law" or a "failure to perform basic research." *Id.* Instead, trial counsel consulted with two experts, reasonably relied on the expected testimony by the prosecution's expert witness that would be favorable to the defense, and effectively cross-examined the prosecution's expert witness.

> Second, Petitioner takes issue with the trial court's conclusion that
>
> defendant merely claims that counsel failed to consult experts who "would meaningful assisting assist him" in advancing defendant's defense. Moreover, defendant has not attached any affidavits or other evidence to support his contentions that there were other witnesses or other evidence that could have been presented in order to raise doubt about his guilt.

ECF No. 15-15, PageID.941. Petitioner argues that

30

> This conclusion is unreasonable in light of the fact that Mr. Hale *did* include two affidavits' as an offer of proof; 1) his own affidavit *(Appendix-A)* indicating that trial counsel told Mr. Hale that Dr. Michelle Glinn informed him that the toxicology evidence was in-fact supportive of the defense, because the levels indicted would not impair one's ability to drive a motor vehicle, nor would the person be considered intoxicated, and 2) a correspondence from Randall L. Commissaris PhD, *(Appendix-J)* as an offer of proof that Mr. Commissaris reviewed the toxicology report in conjunction with the facts surrounding the timeline of the crash and advised Mr. Hale that he "could be of assistance in [his] case in terms of preparing an affidavit or even providing testimony on his behalf."

ECF No. 8, PageID.98.

The Court does not find that the state court's conclusion is unreasonable: Primarily, Petitioner received the letter from Commissaris *while* relief from judgment was pending. *See* ECF No. 16, PageID.1739. It cannot be said, therefore, that trial counsel's failure to consult an expert who contacted Petitioner *after* trial constituted ineffective assistance of counsel. In any case, the established law does not impose any duty on trial counsel to *keep* searching until a favorable expert can be identified.

Next, it is unclear whether Commissaris's letter was part of the record that the state court judge could have relied on — Petitioner acknowledges that he "received the correspondence from Dr. Randdall L.

Commissaris" while his "motion for relief from judgment was *pending*." *Id.* at PageID.1738–39. Thus, while Petitioner alleges that "he immediately filed a motion under MCR 6.502(F) to supplement his pending motion adding Dr. Commissaris, letter as an offer of proof," *id.* at PageID.1739, nothing in the record indicates that the state court permitted Petitioner to supplement his motion under MCR 6.502(F) so as to make the letter part of the record the trial court should have considered.

In any case, nothing in Commissaris's letter indicates that he was able or willing to testify favorably as to Petitioner's theory of the case. *See* ECF No. 9, PageID.155.

Lastly, Petitioner's "own affidavit indicating that trial counsel told Mr. Hale that Dr. Michelle Glinn informed him that the toxicology evidence was in-fact supportive of the defense," ECF No. 8, PageID.98, does not establish that Dr. Glinn was able or willing to testify favorably as to Petitioner's theory of the case. Indeed, Dr. Glinn appears to have been unavailable on the day of the trial. ECF No. 9, PageID.112.

In any case, a habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on

speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered, neither to the Michigan courts nor to this Court, any substantial evidence that an expert witness would testify and what the content of this witness's testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Thus, Petitioner is not entitled to relief on his second claim.

### 2. Trial Counsel's Purported Failure to Competently Litigate a Potential Fourth Amendment Violation

In his third claim, and his second effective assistance of counsel claim, Petitioner argues that his trial counsel was ineffective for failing to competently litigate his Fourth Amendment claim. Specifically, Petitioner argues that he was deprived of the effective assistance guaranteed by the Sixth Amendment when his "counsel failed to investigate and argue that the search warrant was 'so lacking in indicia of probable cause' that no reasonably well-trained officer would have relied on it despite the judges' authorization, and the good-faith exception to the exclusionary rule cannot apply to save it." ECF No. 8, PageID.77.

As an initial matter, this Court finds that the trial judge rejected this claim pursuant to M.C.R. 6.508(D)(2), because Petitioner had already raised a Fourth Amendment claim on direct review. *Hale,* No. 15-256959, at *6, ECF No. 15-15, PageID.942. However, the court never reached the merits of Petitioner's ineffective assistance of counsel claim.

When a state court fails to adjudicate a habeas petitioner's claim on the merits, a federal court is required to review that claim *de novo. See McKenzie v. Smith,* 326 F.3d 721, 726 (6th Cir. 2003). Accordingly, this Court shall review this ineffective assistance of trial counsel claim *de novo.* Of course, even where a federal habeas court applies *de novo* review to a claim of ineffective assistance of counsel, the standard for judging a counsel's performance is still "a most deferential one." *Hale v. Cool,* 122 F.4th 637, 648 (6th Cir. 2024) (quoting *Harrington*, 562 U.S. at 105).

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

34

different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).[3]

Here, Petitioner argues that trial counsel should have argued that the good-faith exception to the Fourth Amendment's exclusionary rule did not apply. The good-faith exception states that illegally seized evidence should not be excluded if the police officers who executed the warrant acted in reasonable, good-faith reliance on its validity. *United States v. Leon*, 468 U.S. 897, 919–921 (1984). The good-faith exception has been adopted by the State of Michigan. *People v. Goldston*, 470 Mich. 523, 525–526 (2004). "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith

---

[3] Petitioner does not bring an independent Fourth Amendment claim in his amended habeas petition, even though he did so in his original petition. A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976). Petitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress and later to the Michigan appellate courts. That is sufficient to preclude review of any independent Fourth Amendment claim on habeas review. *See Good v. Berghuis,* 729 F.3d 636, 640 (6th Cir. 2013). Therefore, whether the trial court or the Michigan Court of Appeals correctly decided the Fourth Amendment claim is not an issue this Court can consider on habeas review. The only issue for this Court is whether trial counsel competently litigated the Fourth Amendment issue.

in conducting the search." *Leon*, 468 U.S. at 922 (cleaned up). Whether the police officers act in good faith in executing a warrant is measured by a standard of objective reasonableness. *Id.*

A police officer's reliance on a defective search warrant is not done in good faith when "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n.23. In *Leon*, the Supreme Court listed four circumstances in which the good-faith exception does not apply: (1) the magistrate was "misled by information in the affidavit that the affiant either knew or would have known was false but for his reckless disregard for the truth"; (2) "the magistrate wholly abandoned his judicial role"; (3) a police officer relied on an affidavit that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) a search warrant is facially deficient such that "the executing officers cannot reasonably presume it to be valid." *Id.* at 923; *see also Goldston*, 470 Mich. at 531.

We begin our assessment of Petitioner's claim by recounting the relevant facts.

On the day of the traffic crash, September 13, 2015, Judge Walker granted a search warrant to permit the taking of a blood sample. ECF No. 9, PageID.143. In the accompanying affidavit, Deputy M. Steele attested that

> Lameka Thomas informed affiant that she personally observed said subject involved in traffic crash and run on foot E/N towards Sanford and then N/B through yards before losing sight of them. Robert Hale was subsequently identified by witness who picked him out. … Driver of vehicle that was hit by Robert Hale died of injuries.

*Id.* The affidavit made no specific mention of the crack pipe found in Hale's car. *Id.*

> Petitioner alleges that

> It was apparent on its face that the search warrant affidavit was fatally deficient, because it did not contain any facts to establish probable cause to believe that any intoxication was suspected. Mr. Hale, immediately brought this issue to counsel's attention. Mr. Hale requested that counsel challenge the warrant on 4th Amendment grounds, because the warrant was bare bones.

ECF No. 8, PageID.79.

Subsequently, trial counsel filed a motion to suppress the blood evidence, arguing that "it appears that the information in the affidavit for search warrant is false and misleading and, therefore, must be suppressed." ECF No. 9, PageID.146. Specifically, trial counsel argued

that "Nowhere in [Lameka Thomas's] statement does she ever say that she picked anyone out, or even saw Defendant after he was taken into custody. … She also said that she DID NOT pick Defendant out of a photo lineup or in custody lineup." *Id.* at PageID.145. Trial counsel did not argue that the search warrant was facially deficient. *Id.*

On February 10, 2016, Judge Daniel P. O'Brien held a hearing on Hale's motion to quash, motion to suppress, and motion for expert appointment.

As relevant here, trial counsel repeated the argument he raised in the motion to suppress, arguing that "that the information that's contained in the search warrant is not accurate." ECF No. 15-4, PageID.413. Judge O'Brien expressed confusion,

> I have to retool my brain because I thought your challenge to the affidavit, and maybe it's part of the same thing, … [t]hat there's nothing in the affidavit that suggests that there is any controlled substance or alcohol in the blood of the person to be searched. But that's derivative of your argument that they don't even have the person to be searched.

*Id.* Trial counsel responded: "Well, what you're saying is also true … you're making my point in another way." *Id.* at PageID.414. Trial counsel did not further raise a lack of probable cause for the warrant permitting the taking of a blood sample.

Later, Judge O'Brien stated, "There's no — I don't see anything in the affidavit about, you know, bloodshot eyes or I went to the niece's house and he was, you know, slurred speech and so forth that would – where is the meat of — … for blood?" *Id.* at PageID.418. Following that question, the prosecutor and Judge O'Brien discuss whether the information contained in the affidavit — a fatal accident involving "high speed, running a red light, … fleeing the scene" — "is enough to authorize a search for blood." *Id.* While the prosecutor argued that these factors were enough to establish probable cause to authorize a search for blood, Judge O'Brien remained skeptical. *Id.*

> Judge O'Brien advised the parties
>
> the Court will grant an evidentiary hearing on your contention about contrary or wrong information or whatever in the search warrant. But the Court is also curious whether the — that issue aside, whether there is a basis for the search from the four corners of the affidavit itself, assuming that it's all — that it's all accurate. I'm curious — you know, you give me an example, a person's speeding, crashes, and fatality. Well, let's just — let's just do some do some legal research. A person speeding, crash, no fatality, affidavit for blood grant? So do some research on that.

*Id.* at PageID.419. Then, trial counsel begins to argue, mentioning "*People v. Sloan*, 450 Mich.," before Judge O'Brien interrupts, "I don't need it now. Save it for the hearing." *Id.* at PageID.420.

On February 24, 2016, the court conducted an evidentiary hearing. In his opening statement, the prosecutor argued that while there was "nothing in the warrant as the Defendant bolts, saying 'Hey, I observed him with glass eyes and — he appeared to be intoxicated,' … there is probable cause." ECF No. 15-5, PageID.428.

In response, trial counsel argued that that certain portions of the affidavit should be struck because they were based on knowing or intentional false or statements, *id.* at PageID.429, and that "whether or not the Court strikes that statement," that the affidavit does not contain enough sufficient information to establish probable cause, *id.* at PageID.432–33. Trial counsel argued,

> the Court was asking, okay, I don't see anything in here about glassy or bloodshot eyes, odor of intoxicants, I don't see anything like that in here, which would be a requirement that I would think you would need to extract blood from somebody. Just because there's an accident and there's a fatality, doesn't mean you can take somebody's blood absent anything else, absent any indication that the person had any substance in their system that they shouldn't have had. And there's nothing about that in this affidavit.

*Id.* at PageID.433. Counsel also cited to the Michigan Supreme Court's opinions in *People v. Goldston*, 470 Mich. 523 (2004) and *People v. Sloan*, 450 Mich. 160 (1995), and argued that the good-faith exception did not

apply here to save the defective warrant. *Id.* at PageID.431–34. Trial counsel also argued specifically that the good-faith exception to the exclusionary rule does not "apply where the police — where there's misleading information." *Id.* at PageID.486.

After considering the evidence, Judge O'Brien made following findings:

> With full recognition and homage and great deference to Judge Walker's determination, the search warrant was factually unsupported on the element of, quote, under the influence, the element of intoxication, if *you* will. There was wholesale absence of that element.

ECF No. 15-6, PageID.490. However, Judge O'Brien found that the exclusionary rule should not be applied under *Leon*, 468 U.S. 897, and *People v. Goldston*, 470 Mich. 523, because there was no "misconduct" or "willful conduct." *Id.* at PageID.493.

Specifically, surveying the police's errors in the case, Judge O'Brien stated that

> In this case, the police had the goods on the Defendant. Their errors were, one, omitting the goods (the crack pipe) on the element of drug-influenced operation; and two, unwittingly compacting identity into one person, Lameka, rather than two persons, Lameka, man running from smoking truck, to entering a silver car, plus Victor, man entering silver car, to place of arrest, equals Defendant's identity. And the third error, if you will, by the police, was omitting a transitional

41

> phrase to apprise the reader, the magistrate here, that the citizen, Lameka, who saw a man run on foot before losing sight of them (sic) was not the witness who subsequently identified Robert Hale and who picked Robert Hale up.

*Id.* However, Judge O'Brien found that such errors did not compel application of the exclusionary rule. *Id.* at PageID.494. Summarizing "legal take-aways from this Court's research," Judge O'Brien concluded that

> Barring misconduct, evidence seized pursuant to judicially-sanctioned, but factually unsupported search warrant is admissible. That is the Court's paraphrasing of Goldston, which itself borrowed from other cases. Goldston's focus was on police misconduct, and though the judiciary which grants or denies search warrants are viewed less exactly, the judiciary is nevertheless subject to review.

*Id.* Here, what the police omitted from the affidavit was "[n]othing exculpatory, but plenty inculpatory. What did they omit? … evidence of being under the influence of drugs, a crack pipe." *Id.* Further,

> Both affiant and the magistrate meet up at identity, although both got there by different routes. The routes were different due to haste … This is not police misconduct. Suppression of the evidence would not further the objective of discouraging police misconduct. Suppression would, of course, encourage more care, but the haste here did not deprive the Defendant of a right, it only deprived him of an edge.

*Id.* at PageID.495. Subsequently, trial counsel asked for an interlocutory appeal. *Id.* at PageID.496.

In affirming the denial of the motion to suppress, the Michigan Court of Appeals agreed that there was "a wholesale absence of factual support" in the warrant's affidavit that Petitioner was under the influence of a controlled substance. *Hale*, 2018 WL 1734240, at *2. The Michigan Court of Appeals upheld the search warrant after finding that there was no showing that the police acted in bad faith in obtaining the warrant:

> The evidence does not demonstrate that Deputy Steele included a deliberate falsehood in the affidavit or acted in reckless disregard for the truth. He testified that the first challenged sentence of the affidavit was based on information provided by Thomas [a witness to the crash], and the second challenged sentence was based on the identification of defendant by defendant's brother to the Waterford police. When reading these sentences separately, and in a commonsense rather than a hypertechnical way, Deputy Steele's explanation of the information is clear. When read separately, the sentences do not necessarily establish that 'witness' in the second sentence refers to Thomas. The trial court found that Deputy Steele's testimony was honest and not ill-motivated. This Court gives deference to the trial court's determination regarding witness credibility. Because there is no evidence of deliberate falsehood or reckless disregard for the truth, the trial court did not err in finding that the exclusionary rule applied to permit admission of defendant's blood test results, despite the affidavit's failure to establish probable cause related to the intoxication elements of defendant's charged offenses. There is no indication in the record why the discovery of the crack pipe in the white truck driven by defendant at the scene of the accident was not included in the affidavit. Exclusion of the blood test results,

however, would not serve the purpose of deterring police misconduct, as Deputy Steele acted in haste, but not in bad faith.

*Id.* at *3 (internal citations omitted).

In his present motion, Petitioner argues that trial counsel was ineffective for failing to argue that the good-faith exception to the defective search warrant did not apply.

Petitioner acknowledges that counsel filed a motion to suppress the blood test on the ground that the search warrant and the affidavit contained inaccurate information. However, Petitioner argues that during the February 24, 2016 evidentiary hearing, "[c]ounsel failed to research or prepare the substantial 4th Amendment issue." ECF No. 8, PageID.79. This claim is belied by the record. The transcript of the evidentiary hearing reflects that trial counsel argued, in a manner clearly evincing research and preparation, that the affidavit lacked probable cause: Trial counsel presented arguments as to this point under multiple theories; trial counsel cited case law extensively; and trial counsel exhibited a deep knowledge of the record. *See* ECF No. 15-5.

Petitioner also argues that

[a] reasonably competent defense attorney would have recognized that the affidavit in this case was "bare bones" and

44

> "so lacking", thus fatally deficient. And, in light of the clear
> and long-standing law argued above, a reasonably competent
> defense attorney would have recognized that the third "so
> lacking" exception of *Leon* applied to the warrant in this case,
> to exclude the evidence.

ECF No. 8, PageID.92. In other words, Petitioner argues that while trial counsel argued the warrant was facially insufficient and that the situation fell under one of the exceptions to the exclusionary rule mentioned in *Leon*, trial counsel's performance deprived him of the effective assistance of counsel because trial counsel should have *also argued* that the case met another exception outlined in *Leon*.

The Court rejects this argument. In light of the significant overlap between the argument Petitioner faults trial counsel for not raising and the argument trial counsel actually raised — trial counsel argued that the warrant contained false and misleading information, was facially insufficient, and that the good-faith exception did not apply because the warrant contained false and misleading information — trial counsel's efforts are a far cry from being "unreasonable" as required for a colorable ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 689.

Nor can it be said that the Petitioner's argument — that the warrant was "so lacking" in indicia of probable cause as to render official

belief in its existence entirely unreasonable," *Goldston*, 470 Mich. at 531
— is "clearly stronger than" the argument actually "presented" by trial
counsel, *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*,
800 F.2d 655, 646 (7th Cir. 1986)). Namely, the circumstances
surrounding the execution of the warrant — the officer's awareness of the
crack pipe found in the passenger seat in Petitioner's truck — indicate
that the officer's reliance on the search warrant was eminently
reasonable. In fact, both Judge O'Brien, *see* ECF No. 15-6, PageID.493,
and the Michigan Court of Appeals, *see Hale*, 2018 WL 1734240, at *3,
considered the discovery of the crack pipe when assessing whether the
good-faith exception to the exclusionary rule should apply.[4]

Thus, Petitioner is not entitled to relief on his third claim.

---

[4] While the Sixth Circuit, "[w]hen engaging in the *Leon* inquiry, … will
not rely on information known only to the officer (and not the
magistrate)," many courts "hold that they may consider all of the
circumstances (including facts 'outside of the four corners of the
affidavit') to evaluate whether an officer reasonably relied on a judge's
finding that probable cause existed when issuing a warrant." *United
States v. Davis*, 84 F.4th 672, 680 (6th Cir. 2023) (collecting cases).
While the Michigan Supreme Court does not appear to have explicitly
decided this question, both Judge O'Brien and the Michigan Court of
Appeals appear to have relied on facts outside of the four corners of the
affidavit.

### 3. *Appellate Counsel's Failure to Raise Certain Claims*

In his fourth claim, and his third effective assistance of counsel claim, Petitioner argues that his appellate counsel was ineffective for failing to raise his first through third claims on Petitioner's appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on appeals of right. Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

But, as explained above, Petitioner's first through third claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Thus, Petitioner is not entitled to relief on his fourth claim.

## C. Evidentiary Hearing Claim

In his fifth claim, Petitioner requests an evidentiary hearing.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459–60

(6th Cir. 2001). In light of the fact that Petitioner's claims are meritless, he is not entitled to an evidentiary hearing.

## IV. CONCLUSION

The Court denies the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

The Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. However, although jurists of reason would not

debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF No. 8) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

Dated: November 21, 2025          /s/Terrence G. Berg
                                  _____
                                  HON. TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE